**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JOHN ANTHONY PIERCE,

                               Plaintiff,

      - v -                                               9:21-CV-1301
                                                           (TJM/DJS)
TIMOTHY McCARTHY, *et al.*,

                               Defendants.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| JOHN ANTHONY PIERCE<br>Plaintiff, *Pro Se*<br>16-B-1596<br>Cayuga Correctional Facility<br>P.O. Box 1186<br>Moravia, New York 13118 | |
| HON. LETITIA JAMES<br>Attorney General of the State of New York<br>Attorney for Defendants<br>The Capitol<br>Albany, New York 12224 | BRITTANY M. HANER, ESQ.<br>Assistant Attorney General |

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER[1]

*Pro se* Plaintiff John Pierce brought this action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his civil rights. Dkt. No. 12, Am. Compl. Presently

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

pending is a Motion to Dismiss the Complaint, pursuant to FED. R. CIV. P. 12(b)(6), on behalf of Defendants. Dkt. No. 43. Also pending are letter requests regarding an alleged default by Defendant Andrew Cuomo. Dkt. Nos. 55-57. For the reasons set forth below, the Court recommends that the Motion to Dismiss be granted in part and denied in part and that the letter requests regarding a potential default be denied as moot.

## I. BACKGROUND

### A. Procedural History

The Complaint in this matter was initially filed on December 7, 2021. Dkt. No. 1. At the time Plaintiff was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") housed at Auburn Correctional Facility. *Id.* at p. 2. Following an initial review of that Complaint by Senior District Court Judge Thomas J. McAvoy a number of claims were dismissed, leaving only First and Fourteenth Amendment claims against certain Defendants. Dkt. No. 5. Plaintiff then filed an Amended Complaint, which the District Court again limited to certain First and Fourteenth Amendment claims. Dkt. Nos. 11 & 12. The Amended Complaint is now the operative pleading. Defendants filed a Motion to Dismiss for failure to state a claim. Dkt. No. 43. Plaintiff requested and was granted an extension of time to respond to the Motion, but to date has not responded. *See* Dkt. Nos. 45 & 46.

**B. Factual Background**

Though far from a model of clarity, the gravamen of the Amended Complaint relates to alleged religious discrimination. *See* Dkt. No. 11 at p. 5 (describing religious claims asserted in Amended Complaint). Plaintiff identifies as a "Biblical Christian" which he indicates is a distinct Protestant denomination. Am. Compl. at p. 7; Dkt. No. 12-1 at p. 2.[2] The Amended Complaint objects to the services DOCCS offers for Protestant inmates and the chaplains hired by DOCCS to minister to those inmates. *See, e.g.*, Am. Compl. at pp. 6-9 & 26. Broadly stated, Plaintiff believes that the chaplains serving Protestant inmates are not providing proper religious assistance. *See* Dkt. No. 12-1 at pp. 8-10. He seeks the teaching of Biblical Christianity specifically, rather than being required to attend general Protestant services. *Id.* at pp. 20-23.

**II. LEGAL STANDARD FOR MOTION TO DISMISS**

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

---

[2] Page citations to the Amended Complaints and exhibits are to the page numbers provided by the Court's CM/ECF system.

The Court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the Plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to Plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been

alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Nonetheless, a *pro se* complaint must state a plausible claim for relief. *See Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).

### III. DISCUSSION

#### A. First Amendment Claim

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). "A prisoner's First Amendment rights, however, are [b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system." *Gilliam v. Baez*, 2017 WL 476733, at *4 (S.D.N.Y. Feb. 2, 2017) (internal quotation and citation omitted). "Accordingly, a prisoner's free exercise claims are 'judged under a reasonableness test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights.'" *Id.* (quoting *Ford v. McGinnis*, 352 F.3d at 588).

"To prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, 629 F. App'x 52, 55 (2d Cir. 2015). There is a substantial burden "where 'the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Thomas v. Waugh*, 2015 WL 5750945, at *10 (N.D.N.Y. Sept. 30, 2015) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). Specifically, "[t]he relevant question in determining whether [Plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [Plaintiff's religious] practice . . . ." *Ford v. McGinnis*, 352 F.3d at 593-94. Furthermore, "[t]he government's interference with plaintiff's exercise of religion must be 'more than an inconvenience,' and must rise to the level of 'burden[ing] a belief central to plaintiff's religious doctrine.'" *Shapiro v. Cmty. First Servs., Inc.*, 2014 WL 1276479, at *10 (E.D.N.Y. Mar. 27, 2014) (alterations in original) (quoting *Alameen v. Coughlin*, 892 F. Supp. 440, 448 (E.D.N.Y. 1995)). "If the plaintiff satisfies the burden of showing that 'the disputed conduct substantially burden[ed] his sincerely held religious beliefs,' then the defendant 'bear[s] the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct.'" *McLeod v. Williams*, 2020 WL 2512164, at *4 (S.D.N.Y. May 15, 2020) (alterations in original) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006)). Still, "the burden remains with the prisoner to 'show that these [penological] concerns were irrational.'" *Ford v.*

*McGinnis*, 352 F.3d at 595 (alterations in original) (quoting *Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989)); *Salahuddin v. Goord*, 467 F.3d at 275.

The allegations in the Amended Complaint include claims by Plaintiff that no services meeting his religious needs have been held, Dkt. No. 12-1 at p. 11, that he has been told by DOCCS officials that contrary to his beliefs the religious services being offered to him are proper and that his alternative is to simply study his religion on his own and that he is prohibited from studying his own religious beliefs with other inmates. *Id.* at p. 118. Contrary to Defendants' argument that dismissal is required because the allegations fail to show a burden on Plaintiff's religious beliefs, Defs.' Mem. of Law at pp. 8-9, claims that he has been denied religious services altogether clearly allege a substantial burden.[3] Allegations of that nature are clearly sufficient to withstand a Motion to Dismiss. *See*, *e.g.*, *Hosannah v. Nassau Cnty. Crim. Supreme Ct. Sergeant Officer(s)*, 2017 WL 3207966, at *14 (E.D.N.Y. July 5, 2017), *report and recommendation adopted sub nom. Hosannah v. Sposato*, 2017 WL 3207750 (E.D.N.Y. July 26, 2017).

Defendants implicitly rely on the existence of a generic Protestant service as sufficient to satisfy DOCCS' obligation to provide religious services to Plaintiff. Defs.' Mem. of Law at p. 9. While this may well be sufficient to meet DOCCS' constitutional obligation when all the facts are known regarding Plaintiff's religious demands and the burdens they may impose upon DOCCS, the provision of a generic service in and of itself does not entitle Defendants to dismissal of Plaintiff's First Amendment claim. *See Orafan*

---

[3] The Court offers no view on whether these allegations would be sufficient to withstand a properly supported summary judgment motion.

7

*v. Goord*, 411 F. Supp. 2d 153, 160 (N.D.N.Y. 2006), *vacated and remanded sub nom. Orafan v. Rashid*, 249 F. App'x 217 (2d Cir. 2007) (discussing fact intensive analysis required in addressing lawfulness of generic services).

While Plaintiff will ultimately need to establish a substantial burden on his religious beliefs, "the plaintiff need not make that showing in his complaint or in response to a Rule 12(b)(6) motion to dismiss." *Wiley v. Baker*, 2022 WL 3045042, at *6 (D. Vt. June 10, 2022), *report and recommendation adopted*, 2022 WL 3042140 (D. Vt. Aug. 2, 2022). Liberally construed, Plaintiff has alleged a sufficient burden on his religious belief to survive the pending Motion.

### B. Fourteenth Amendment Claim

Plaintiff's Amended Complaint has also been construed to allege that his equal protection rights under the Fourteenth Amendment were violated because his religious rights were not accommodated in the same manner as other religions. Dkt. No. 11 at p. 5. Defendants seek dismissal of this claim on the ground that Plaintiff failed to sufficiently allege differing treatment between similarly situated groups. Defs.' Mem. of Law at pp. 10-11.

To establish an equal protection claim, "it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994). That type of specific pleading requirement is particularly important in a case such as this because it is well-established that "prison officials need not provide identical facilities or personnel for every religious group."

*Orafan v. Goord*, 411 F. Supp. 2d at 167 (citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972)). The Amended Complaint contains virtually no allegations regarding disparate treatment between groups. It requests, as relief, that "DOCCS afford those of the Christian faith the same level freedom to exercise their faith as the other faith groups recognized by them." Am. Compl. at p. 25. The Amended Complaint is devoid of allegations as to how the Christian faith, so broadly stated, is being treated differently than other faith groups. In fact, the Amended Complaint "does not identify any comparators or similarly situated entities at all." *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010). The claim, therefore, is stated in too conclusory a fashion to survive the present Motion. *George v. Cnty. of Westchester*, 2018 WL 3364393, at *8 (S.D.N.Y. July 10, 2018) (citing cases); *Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 572 (S.D.N.Y. 2012).

Accordingly, the Court recommends that Plaintiff's Equal Protection claim be dismissed.

### C. Defendant Cuomo

The Complaint also asserts claims against former New York Governor Andrew Cuomo. The only remaining claim against Cuomo is an official capacity claim for injunctive relief. Dkt. No. 5 at pp. 13-14; *see also* Dkt. No. 57 at p. 1. Specifically, the claim against Cuomo relates to Plaintiff's request "seeking implementation of certain religious practices at Auburn C.F." Dkt. No. 5 at p. 13. Defendant Cuomo has never appeared in the action and Plaintiff has requested the entry of default against him. Dkt.

No. 55. Counsel from the Attorney General's Office suggests that a default is not appropriate because Cuomo was never properly served. Dkt. No. 56.

Plaintiff's claim against Defendant Cuomo, seeking only injunctive relief, is best understood as a claim asserted against Defendant in his official capacity. *See Tanvir v. Tanzin*, 894 F.3d 449, 459 n.7 (2d Cir. 2018); Dkt. No. 57 at p. 1. In such a suit, "if the defendant in an official capacity suit leaves office, the successor to the office replaces the originally named defendant." *Tanvir v. Tanzin*, 894 F.3d at 459 n.7 (citing FED. R. CIV. P. 25(d)). Given that Cuomo no longer serves as Governor, the Court recommends that the current Governor, Kathy Hochul, be substituted as the proper party pursuant to Rule 25(d) and that Cuomo be dismissed as a Defendant. The Court further recommends that the claim against Hochul then be dismissed.

First, to the extent Plaintiff's claim seeks injunctive relief regarding religious programming at Auburn Correctional Facility, the record reflects that Plaintiff has now been transferred out of that facility. Dkt. No. 54. "It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (citing cases); *see also Booker v. Graham*, 974 F.3d 101, 107 (2d Cir. 2020). Any claim for injunctive relief specific to Auburn Correctional Facility, therefore, is moot.

Second, "the relief [Plaintiff] seeks is a change in the policy of the Department of Corrections and Community Supervision" and as such, the proper parties related to that form of injunctive relief are officials of the Department. *Steinmetz v. Cabrera*, 2018 WL

671282, at *2 (W.D.N.Y. Jan. 30, 2018). Here, the Acting Commissioner of the Department remains a Defendant, as do numerous other officials employed by DOCCS and so there appears to be no basis for maintaining the Governor of New York as a Defendant solely for purposes of injunctive relief. *See Curtis v. Pataki*, 1997 WL 614285, at *5 (N.D.N.Y. Oct. 1, 1997). Any relief directing DOCCS to implement or change policies regarding religious programming would be best directed to DOCCS officials, rather than the Governor, and so the Court recommends that the official capacity claim against the Governor be dismissed. *Id.*; *see also* FED. R. CIV. P. 21(d); *Concerned Home Care Providers, Inc. v. Cuomo*, 979 F. Supp. 2d 288, 299 (N.D.N.Y. 2013), *aff'd*, 783 F.3d 77 (2d Cir. 2015) (dismissing Governor when agency head who is responsible for administering policy remains a Defendant).

Accordingly, the Court recommends that Governor Kathy Hochul be substituted for Andrew Cuomo and that Hochul then be dismissed from the action.

### IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Governor Kathy Hochul be substituted as a Defendant for Defendant Andrew Cuomo pursuant to FED. R. CIV. P. 25(d); and it is further

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 43) be **GRANTED in part and DENIED in part** as set forth herein; and it is further

**RECOMMENDED**, that all claims against Defendant Hochul be **DISMISSED**; and is

**RECOMMENDED**, that the Letter Requests regarding default be **DENIED as moot**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order upon the parties to this action.

Dated: May 17, 2023
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge